2019 IL App (1st) 170780

No. 1-17-0780

Opinion filed on June 21, 2019

Fifth Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| JOHN Q. KELLY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE VILLAGE OF KENILWORTH, THE | ) | |
| ILLINOIS STATE POLICE, THE COOK | ) | No. 16 CH 5192 |
| COUNTY STATE'S ATTORNEY'S OFFICE, | ) | |
| and THE COOK COUNTY MEDICAL | ) | Honorable |
| EXAMINER, | ) | Anna Helen Demacopoulos, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Hall concurred in the judgment and opinion.

**OPINION**

¶ 1    In 1966, 21-year-old Valerie Percy was murdered at her home in the Village of Kenilworth (Kenilworth). Her murder remains unsolved. As the fiftieth anniversary of her death approached, plaintiff, John Q. Kelly, filed requests under the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)) for information concerning the murder investigation. Specifically, he filed requests with Kenilworth, the Illinois State Police (ISP), the Cook County State's Attorney's Office (CCSAO), the Cook County Medical Examiner (CCME) and the

Chicago Police Department (CPD). When those public bodies declined to turn over documents, Kelly filed this action against them in the circuit court, although his claim against the CPD was later voluntarily dismissed. Following the submission of affidavits, and the court's *in camera* inspection of certain documents in the remaining defendants' files, the court entered summary judgment in defendants' favor, requiring only that CCME turn over a small portion of documents.

¶ 2     On appeal, Kelly asserts that defendants did not meet their burden of demonstrating that all withheld records were exempt from disclosure. According to Kelly, the procedures used below did not present the court with an adequate factual basis to determine whether an exemption applied to all withheld records and denied him the opportunity to engage in adversarial testing. We reverse and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4     On September 18, 1966, an intruder entered Valerie's bedroom, inflicted 2 blows to her head and stabbed her 10 times. At that time, Kenilworth and the surrounding area lacked a major crimes task force. Kenilworth initially pursued the investigation with help from the surrounding communities and the ISP. Eleven days after the murder, however, the ISP was placed in charge. In the first few years of the investigation, the ISP investigated approximately 1190 leads. The investigation ebbed and flowed over the next decades and the ISP turned over the investigation to Kenilworth in 2002. In 2014, the North Regional Major Crimes Task Force/Percy Homicide Task Force was created.[1] Its members include the Kenilworth Police Department, the Northbrook Police Department, the Wilmette Police Department, the Evanston Police Department and a special agent from the Federal Bureau of Investigation (FBI).

---

[1]It is not clear from the record whether these are separate task forces.

¶ 5     In January 2016, Kelly tendered FOIA requests to defendants, seeking all records pertaining to the investigation into Valerie's murder, including investigative reports, witness interviews, follow-up reports, photos, evidence vouchers, forensic testing results, audio and video recordings, transcripts, findings, conclusions, summaries of witness testimony, notes, memos, and correspondence.[2] Kenilworth denied Kelly's request in its entirety, stating that "[t]he Specified Records were created in the course of administrative enforcement proceedings, or for law enforcement purposes, and disclosure would *** obstruct or interfere with an active or ongoing criminal investigation by the Village," citing, in pertinent part, the exemption found in section 7(1)(d)(vii) of FOIA. *Id.* § 7(1)(d)(vii). The CCSAO also denied the request pursuant to sections 7(1)(d)(i) and 7(1)(d)(vii). *Id.* § 7(1)(d)(i), (vii). Furthermore, while it initially appeared that the ISP was prepared to turn over documents, it ultimately denied Kelly's request after determining that the case was still open. The ISP determined that the information requested would interfere with a pending or reasonably contemplated law enforcement proceeding. The CCME never responded. No defendant cited the exemption found in section 3(g) of FOIA, which applies to "unduly burdensome" requests. *Id.* § 3(g).

¶ 6     In April 2016, Kelly filed the instant complaint against defendants, asserting they willfully and intentionally violated FOIA by failing to produce records responsive to a request. Kelly moved for partial summary judgment against Kenilworth, the ISP and the CCSAO, arguing that those public bodies had the burden of proving the requested records were exempt. Kelly also argued that the ISP and the CCSAO were not conducting any investigation or enforcement proceeding and could not rely on Kenilworth's investigation to claim an exemption.

---

[2]While Kelly first claimed a commercial purpose for the request, he subsequently cited a noncommercial purpose.

¶ 7 Kenilworth then filed a cross-motion for summary judgment, asserting that records were exempt from disclosure under section 7(1)(d)(vii) because releasing them would interfere with and obstruct the ongoing and active investigation into Valerie's murder being conducted by Kenilworth and the North Regional Major Crimes Task Force. In support thereof, Kenilworth submitted for the circuit court's *in camera* review the declaration of the Kenilworth chief of police, David Miller. Kelly was initially denied access to that declaration. According to Chief Miller, Kenilworth's investigative file contained "approximately 20,000 pages of records, spanning multiple file cabinets and boxes." Significant portions of the file were stored on DVD copies of microfilm, which were not easily reviewable with modern software given the age and quality of the records. The file contained investigative reports, crime scene photographs, photographs and diagrams of the Percy home, interview notes, witness statements, letters providing tips and evidence, pathological reports, lead investigation summaries, correspondence between law enforcement agencies, and other miscellaneous records.[3]

¶ 8 Chief Miller stated that disclosing the information in his declaration or any portion of Kenilworth's investigative file would jeopardize the active, ongoing investigation. In his opinion, the entire file should remain confidential. Kenilworth received new leads every year and compared them to confidential information to verify or discount them. "It is impossible for us to predict when these leads will arise, where they will come from, what they will be about, or whether they will relate to a prior lead or part of the investigation." Additionally, confidential information was used to discount numerous confessions. Chief Miller expected an increase in confessions upon the publicity attending the fiftieth anniversary of the murder. According to

---

[3]Kenilworth alleged that it had tendered to Kelly news stories and other materials that were in the public domain.

Chief Miller, Kenilworth's recent investigation was not "limited to the passive receipt of leads from third parties" either. He provided eight pages of additional details, which were redacted from the declaration ultimately given to Kelly. Miller later added that as recently as September 2015, he had requested assistance from the CCME to analyze evidence in this case.

¶ 9 Kenilworth argued that Chief Miller's declaration showed disclosure would alert targets to the existence and nature of the investigation, allow prime suspects to tamper with evidence, discourage individuals from sharing information with investigators, and make it difficult to assess leads and confessions. Kenilworth's codefendants should also be permitted to withhold records because they were assisting in the investigation. Moreover, the entire file should be withheld. Going through each page of the investigative file "could potentially require hundreds of hours to review, analyze and redact information." Kenilworth did not, however, assert that the undue burden of compliance rendered the documents exempt from disclosure under section 3(g). Additionally, Kenilworth had not offered Kelly an opportunity to confer with Kenilworth to try to reduce the request to manageable proportions. See *id.* At no point has any defendant raised a section 3(g) exemption in this case.

¶ 10 Kelly responded that Kenilworth could not assert an exemption over other defendants, could not assert a blanket exemption, and had not shown that the disclosure of any specific records would interfere with the allegedly ongoing investigation. Furthermore, the burden of compliance was irrelevant to a section 7(1)(d) exemption. Attached to the response was Kelly's own affidavit, which recited his experience as a New York prosecutor and a criminal defense attorney. For the past 25 years, he had litigated civil cases, including wrongful death cases that arose from homicides. Kelly disagreed with Chief Miller's claim that disclosing any portion of the investigative file would obstruct and interfere with the investigation.

¶ 11 At a hearing on September 7, 2016, the circuit court ordered Kenilworth to provide Kelly a redacted copy of Chief Miller's declaration: "I understand that this may be and result in a highly redacted affidavit. But nonetheless, the plaintiff is at least entitled to that." The court then said it would review *in camera* the documents referred to in paragraphs 15, 16, and 17 of Chief Miller's declaration, paragraphs that would be redacted from the copy given to Kelly.[4]

¶ 12 Later that month, the ISP responded to Kelly's partial summary judgment motion, claiming exemptions under sections 7(1)(d)(i) and 7(1)(d)(vii). The ISP argued that agencies do not work in a vacuum and releasing the ISP's records could interfere with an ongoing criminal investigation, even if the ISP was not presently leading the investigation. The ISP attached affidavits from Nancy Easum, the ISP's legal counsel, and Dana Pitchford, a forensic scientist with the ISP.

¶ 13 According to Easum, the ISP investigated Valerie's murder from the 1960s through the 1990s and used FBI resources. The ISP's current file contained over 2000 pages, including names and information from confidential sources and files from the Kenilworth Police Department, the CPD, the FBI, and the CCME. Kenilworth had recently informed the ISP that the investigation was ongoing. Pitchford added that over the last 16 years, she had conducted a significant amount of forensic and DNA testing in Valerie's case. She had also received forensic testing requests from Kenilworth and members of the ISP. While Pitchford concluded her affidavit by apparently describing her involvement in the investigation over the last six months, that paragraph was redacted. The court reviewed *in camera* Pitchford's affidavit and the documents referred to in the final paragraph.

---

[4]Kelly did not request that the court order Kenilworth to create an index (5 ILCS 140/11(e) (West 2016)), and later explained he was waiting for the court to first determine whether a document-by-document inquiry was required or whether a categorical inquiry would suffice.

¶ 14    The CCSAO responded to Kelly's motion by arguing that the records were exempt under section 7(1)(d)(vii) "because the documents at issue are the product of the joint efforts of a number of law enforcement agencies over a period of time in connection with the investigation of the Percy homicide and, more importantly, that investigation is ongoing and active." Attached was the declaration of Assistant State's Attorney Thomas Biesty, the CCSAO's cold case supervisor. According to Biesty, Kenilworth requested the CCSAO's assistance in the investigation in 2002. The CCSAO's investigation file also contained several thousand pages provided by Kenilworth or the ISP as part of their investigation. "These documents were provided with the understanding that they were confidential and not for release publicly, as part of an ongoing investigation." Additionally, the number and variety of documents made it burdensome to categorize every document in the file. Biesty opined that publishing the documents would compromise the ongoing investigation. The declaration, which contained several redactions, stated that the documents referred to therein would be submitted to the court for *in camera* inspection.

¶ 15    The CCME then responded to Kelly's motion for partial summary judgment, arguing that if the court were to grant Kenilworth's motion for summary judgment, or deny Kelly's motion for partial summary judgment as to the ISP and the CCSAO, the court should also deny Kelly's motion for partial summary judgment as to the CCME's records. The court subsequently ordered the CCME to submit an index of records for *in camera* inspection.

¶ 16    At a hearing on December 6, 2016, the circuit court issued its opinion. The court found that (1) Kenilworth's investigation was active and ongoing and its files were exempt under section 7(1)(d)(vii); (2) due to cooperation among the public bodies, Kenilworth's exemptions flowed to its codefendants; (3) the ISP's investigation was active and ongoing and its files were

exempt under sections 7(1)(d)(i) and 7(1)(d)(vii); (4) the CCSAO's investigation was active and ongoing and its files were exempt under section 7(1)(d)(vii); (5) Kenilworth was entitled to assert an exemption over the CCME files in which it had a substantial interest; and (6) Kelly's motion for partial summary judgment as to CCME was granted in part and denied in part. After examining the filed affidavits and reviewing *in camera* more than 1000 pages, the court found that detailed justifications supported each claimed exemption.[5]

¶ 17    Citing federal law interpreting the federal FOIA, the court found it was appropriate to limit its *in camera* review to certain documents, "[c]onsidering the volume of the Percy murder investigatory file."

> "Rather than review the tens of thousands of pages of documents individually, the Court has limited its *in camera* review to specific documents from each Defendant to keep the review manageable. Moreover, after reviewing the documents, the Court finds it unlikely that there is any reasonably segregable non-public portion of the investigatory record that could conceivably be released."

¶ 18    The court found Chief Miller's declaration provided a fact-driven, detailed account of Kenilworth's recent investigation. "Not only has Kenilworth met their burden of clear and convincing evidence, but this Court has no doubt this is an active, ongoing, criminal investigation." Kelly's affidavits did not create a genuine issue of material fact in that regard because he was not an expert, lacked personal knowledge of the Percy investigation, and relied on publicly available facts that may be inaccurate. See Ill. S. Ct. R. 191 (eff. Jan. 4, 2013).

---

[5]We note that while the circuit court cited section 7(1)(d)(i), Kenilworth's summary judgment motion did not rely on that subsection. In addition, the CCSAO asserts on appeal that it too moved for summary judgment. The CCSAO did not, however, directly ask the court to enter summary judgment in its favor. Furthermore, the circuit court did not purport to rule on any cross-motion filed by the CCSAO, notwithstanding the CCSAO's suggestion to the contrary.

Furthermore, while section 7(1)(d) provided exemptions based on conduct of the public body that is "the recipient of the request," it would be absurd to permit one public body to release documents that would interfere with another public body that was entitled to an exemption. Instead, it was sufficient for the recipient of the request to be participating in another public body's investigation. Kenilworth had a substantial interest in asserting exemptions over the documents possessed by the other defendants, and the court would "not discourage agencies from cooperating for fear that sensitive investigatory work on open cases may be revealed through FOIA requests." Even if Kenilworth's exemption did not flow to its codefendants, sufficient documentation showed that the ISP and the CCSAO were participating in ongoing investigations.

¶ 19     The court found Biesty's declaration, which cited the participation of the 2014 task force, provided a compelling account of the ongoing criminal investigation. The court had also reviewed the documents mentioned in paragraphs 14 through 18 of Biesty's affidavit. "To disclose anything further would completely abandon the public policy of the exemption." Additionally, Pitchford's affidavit articulated her involvement in the investigation over the previous six months. With respect to the CCME's file, however, Kenilworth could not claim the exemption for documents that originated outside of the coroner's office, the CCME's predecessor, and that were not made by a public body for law enforcement purposes. The court ordered CCME to release to Kelly the transcript of the coroner's report and certain exhibits with redactions.[6]

¶ 20                                II. ANALYSIS

¶ 21     Illinois public policy dictates that "all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who

---

[6]Records reviewed by the trial court *in camera* were filed under seal in the appellate court.

represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2016). This access is necessary to allow people to fully and freely discuss public issues, make informed political judgments and monitor the government. *Id.* Additionally, "access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government." *Id.*

¶ 22    Consequently, FOIA's provisions are to be construed according to the principle that restraints on access permitted by FOIA are limited exceptions to "full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people." *Id.* "The legislature has concluded that the sunshine of public scrutiny is the best antidote to public corruption, and Illinois courts are duty-bound to enforce that policy." *Better Government Ass'n v. Blagojevich*, 386 Ill. App. 3d 808, 818 (2008). Conversely, "[r]eliance upon self-determination by public officials and employees as to what should or should not be disclosed to the public would frustrate the purposes of [FOIA]." *Baudin v. City of Crystal Lake*, 192 Ill. App. 3d 530, 535 (1989). FOIA is not, however, intended to cause unwarranted invasions of personal privacy or to allow commercial entities to unduly burden public resources. *Blagojevich*, 386 Ill. App. 3d at 818. FOIA cannot be used to disrupt a public body's proper work. *Dumke v. City of Chicago*, 2013 IL App (1st) 121668, ¶ 12.

¶ 23    "All records in the custody or possession of a public body are presumed to be open to inspection or copying" (5 ILCS 140/1.2 (West 2016)), and a public body asserting an exemption from disclosure has the burden of proving that exemption by clear and convincing evidence (*id.* § 1.2, 11(f)). Similarly, in any action before the court, "[t]he burden shall be on the public body to establish that its refusal to permit public inspection or copying is in accordance with the

provisions of this Act." *Id.* § 11(f). A public body may meet its burden of proving a statutory exemption through affidavits, in which case the court need not review the documents at issue *in camera*. *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 469 (2003). Section 11(f) provides, however, that the circuit court "shall conduct such in camera examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of this Act." 5 ILCS 140/11(f) (West 2016). Moreover, our supreme court has found that *in camera* review is the most effective way for a public body to objectively show that the claimed exemption applies. *Illinois Education Ass'n*, 204 Ill. 2d at 471.

¶ 24    To demonstrate that the requested records fall within an exemption, and to assist the court in making its determination, a public body must provide a detailed explanation for claiming an exemption, specifically addressing the requested documents in a manner allowing for adequate adversarial testing. *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 13. "The trial court shall require the agency to create as full a public record as possible concerning the nature of the documents and the justification for nondisclosure without compromising the secret nature of the information." *Baudin*, 192 Ill. App. 3d at 542. Furthermore, a public body can satisfy its burden only by providing objective indicia that an exemption applies under the circumstances. See *Illinois Education Ass'n*, 204 Ill. 2d at 470. Affidavits are insufficient if the public body presents claims that are conclusory, overly vague or sweeping, or merely recite statutory standards. *Day v. City of Chicago*, 388 Ill. App. 3d 70, 74 (2009).

¶ 25    Discovery pertaining to the public body's search for records and its claimed exemptions is not required if the public body's submissions are adequate on their face. *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 997 (2007). When this is the

case, the circuit court can forgo discovery and enter summary judgment based on affidavits. *Id.* "FOIA cases should be handled on motions for summary judgment, once the documents at issue are properly identified." *Id.* While the clear and convincing burden of proof is ordinarily subject to the manifest weight of the evidence standard of review (*Burgess v. Abex Corp.*, 311 Ill. App. 3d 900, 903 (2000)), we review *de novo* an order granting summary judgment (*Better Government Ass'n v. Village of Rosemont*, 2017 IL App (1st) 161957, ¶ 17).

¶ 26                                    A. The Recipient of the Request

¶ 27    Here, the public bodies relied on exemptions found in section 7(1)(d):

> "(1) When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt. The public body shall make the remaining information available for inspection and copying. Subject to this requirement, the following shall be exempt from inspection and copying:
>
> * * *
>
> (d) Records in the possession of any public body created in the course of administrative enforcement proceedings, and any law enforcement or correctional agency for law enforcement purposes, but only to the extent that disclosure would:
>
> > (i) interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by any law enforcement or correctional agency that is the recipient of the request; [or]
>
> * * *

(vii) obstruct an ongoing criminal investigation by the agency that is the recipient of the request." 5 ILCS 140/7(1)(d)(i), (vii) (West 2016). This court has held that police agencies must prove "on a case-by-case basis specifically how a particular witness could be in danger or how an individual investigation could be compromised if a document is disclosed in which all identifying information has been redacted." *National Ass'n of Criminal Defense Lawyers v. Chicago Police Department*, 399 Ill. App. 3d 1, 12 (2010).

¶ 28    Kelly argues that section 7(1)(d)(vii) does not permit Kenilworth to assert an exemption over the other defendants because the statute only applies where "the recipient of the request" is conducting an ongoing investigation. According to Kelly, only the recipient of the request may assert this exemption and only if that recipient is conducting its own investigation. While Kenilworth's codefendants received FOIA requests, they were not independently conducting an investigation. This presents a matter of statutory construction.

¶ 29    We review construction of FOIA *de novo*. *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404 (2009). Courts liberally construe FOIA toward the full disclosure of governmental affairs and the ability of the people to monitor the government. *Id.* at 410-11. Conversely, courts must narrowly construe statutory exemptions from disclosure. *Illinois Education Ass'n*, 204 Ill. 2d at 463. The statute's language is the most reliable indicator of the legislature's intent and courts give effect to a statute's plain and ordinary meaning. *People v. Hanna*, 207 Ill. 2d 486, 497-98 (2003). That being said, it is well settled that an interpretation may accord with a statute's language but not the legislature's intention or the spirit of the statute. *Id.* at 498. Where a literal reading of a statute would lead to inconvenient, unjust or absurd results, "the literal reading should yield." *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12.

¶ 30     Kelly correctly notes that "the recipient of the request" was added to the statute effective January 1, 2010, modifying "an ongoing criminal investigation" to "an ongoing criminal investigation *by the agency that is the recipient of the request*." (Emphasis added.) See Pub. Act 96-542, § 10 (eff. Jan. 1, 2010) (amending 5 ILCS 140/7). Prior to this amendment, the appellate court had only one occasion to address the interaction between public bodies under FOIA. See *Twin-Cities Broadcasting Corp. v. Reynard*, 277 Ill. App. 3d 777 (1996); see also *City of Chicago v. Janssen Pharmaceuticals, Inc.*, 2017 IL App (1st) 150870, ¶ 28 (stating that courts presume the legislature, in enacting new legislation, acts with the full knowledge of prior judicial decisions that address the subject of the legislation).

¶ 31     In *Twin-Cities Broadcasting Corp.*, the reviewing court considered whether a public body possessing information and documents may consent to the disclosure of those documents when another public body having a substantial interest in the disclosure asserts an exemption. *Twin-Cities Broadcasting Corp.*, 277 Ill. App. 3d at 778. Examining somewhat different procedural facts from the case before us, the reviewing court held that FOIA implicitly requires the recipient of a FOIA request to consult with another public body if the recipient (1) denies that the documents sought are exempt or declines to assert an applicable exemption and (2) knows that the agency with which the documents originated would choose to assert the exemption. *Id.* at 782-83. In reaching that determination, the reviewing court observed that under section 3(d)(vii) of FOIA (5 ILCS 140/3(d)(vii) (West 1994)), a public body may extend the time for responding to a request due to a need to consult with another public body with a substantial interest in the matter. *Twin-Cities Broadcasting Corp.*, 277 Ill. App. 3d at 782. The court stated, the "mere possession of the documents, standing alone, is not determinative of an agency's ability to

release documents pursuant to the FOIA if another governmental entity has a substantial interest in asserting an exemption." *Id.* at 783.

¶ 32    Kenilworth contends that *Twin-Cities Broadcasting Corp.* supports its position that it may assert an exemption over records held by other defendants. Kelly contends that the case stands only for the principle that an investigating agency has a substantial interest in keeping its own records secret and that the legislature's decision to amend the statute after the decision in *Twin-Cities Broadcasting Corp.* shows the legislature intended to deviate from that decision. First, even if Kelly is correct in his interpretation of *Twin-Cities Broadcasting Corp.*, that would not preclude this court from expanding that decision. Additionally, we find it is not clear that the legislature intended to depart from *Twin-Cities Broadcasting Corp.* because the amendment occurred approximately 14 years after the decision and there is no indication that courts suffered from any postdecision fallout. The legislative record is silent as to why this language was added. That being said, Kelly's interpretation would lead to results that are absurd, inconvenient, and unjust.

¶ 33    Illinois law and practical necessity require that law enforcement agencies in this state cooperate with one another to investigate and prosecute crime. See *People v. Ringland*, 2017 IL 119484, ¶ 24 (stating that "[t]he State's Attorney's duty to investigate suspected illegal activity acknowledges that a prosecutor ordinarily relies on police and other agencies for investigation of criminal acts"); *Ware v. Carey*, 75 Ill. App. 3d 906, 915 (1979) (stating that the American Bar Association's standards recognize that police effectiveness in addressing crime largely depends on the effectiveness of other agencies, and that joint effort and cooperation is required for the system to work); 20 ILCS 2610/16 (West 2016) (requiring the ISP to assist local police forces with their investigations). Upon the court's inquiry, Chief Miller, stated that Kenilworth did not

have its own crime lab and would use the ISP crime lab, the FBI crime lab or the North Eastern Illinois Regional crime lab to conduct additional forensic testing. The ISP stated, "this case is unlike any other Illinois courts have faced—involving several different public bodies, working together for more than fifty years to solve a murder. And while ISP is no longer the primary agency working on the case, ISP's resources have assisted Kenilworth as recently as this year." The record shows that while Kenilworth may currently be leading the investigation, numerous public bodies have participated in it. See *Hanna*, 207 Ill. 2d at 500 (finding that "[w]hen viewed within the real-world activity that [the statute] was intended to regulate," giving the statute's language its plain and ordinary meaning would produce absurd results). We find the circuit court properly determined that Kenilworth could assert an exemption over the other defendants' records in this case. Were it otherwise, law enforcement agencies would be discouraged from cooperating due to the risk of harmful disclosures and the people of Illinois would be denied effective law enforcement.

¶ 34                                      B. Ongoing Investigation

¶ 35    We also reject Kelly's assertion that defendants did not demonstrate that an investigation was ongoing, as required by section 7(1)(d)(vii). As of 2014, a task force, which included Kenilworth, was investigating Valerie's murder. Miller stated that he had requested assistance from the CCME in this case as recently as September 2015. Pitchford's affidavit indicated that the ISP had been involved in the investigation even more recently. The record filed under seal similarly demonstrates that the investigation is ongoing. Additionally, no one has been convicted. *Cf. Day*, 388 Ill. App. 3d at 76 (stating that the public body's affidavits failed to explain how the investigation of a murder that occurred 17 years earlier was ongoing where the plaintiff was convicted of the murder 14 years earlier and there was no suggestion that a specific,

living perpetrator was at large and under investigation). The passage of 50 years does not change our determination. See also *Africa Fund v. Mosbacher*, No. 92 CIV. 289 (JFK), 1993 WL 183736, at *4 (S.D.N.Y. 1993) (stating that "Documents that would interfere with a lengthy or delayed investigation that may still lead to a prospective law enforcement proceeding still fall within the protective ambit of Exemption 7A.").

¶ 36    Having reviewed the entire record filed under seal, we find the trial court correctly determined that there is an ongoing investigation. That being said, we find that the method used by defendants, Kenilworth, the ISP and the CCSAO in particular, to address the voluminous investigative files did not comport with Illinois law. Defendants failed to demonstrate that a blanket exemption was warranted.

¶ 37                                    C. Voluminous Records

¶ 38    Kelly asserts the circuit court erred in determining that defendants were not required to prove on a document-by-document basis that the section 7(1)(d) exemptions applied. As stated, the court found defendants had shown exemptions under section 7(1)(d)(i) and section 7(1)(d)(vii). Under those provisions, documents are exempt from disclosure

> "*only to the extent that* disclosure would:
>
> > (i) interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by any law enforcement or correctional agency that is the recipient of the request [or];
>
> > * * *
>
> > (vii) obstruct an ongoing criminal investigation by the agency that is the recipient of the request." (Emphasis added.) 5 ILCS 140/7(1)(d)(i), (vii) (West 2016).

Additionally, section 7(1), which states that the public body "shall" make information available for inspection and copying after all exempt information has been redacted from those documents, shows that the person requesting the documents is entitled to them, even if the material remaining after redaction is not useful. Compare *Heinrich v. White*, 2012 IL App (2d) 110564, ¶ 19, with *Copley Press, Inc. v. City of Springfield*, 266 Ill. App. 3d 421, 425 (1994) (stating, where the circuit court and reviewing court had both reviewed the entire police file, that the file could not be meaningfully redacted); *Harwood v. McDonough*, 344 Ill. App. 3d 242, 250 (2003) (finding that where the circuit court performed an *in camera* review of a report and determined that no portion of it was nonexempt, the plaintiff was not entitled to a redacted report because the redaction would leave blank pages, meaningless pronouns, and articles such as "and").

¶ 39    Defendants have essentially suggested that the disclosure of at least a significant portion of their investigative files would interfere with law enforcement proceedings or obstruct an ongoing criminal investigation. Neither Chief Miller, Biesty, nor Easum, however, claimed to have reviewed defendants' entire investigative files. Instead, defendants and their affiants have remarked on the burden of examining and redacting every page. Understandably, defendants would prefer to claim exemptions over their entire files rather than sift through thousands of documents to redact exempt matters and disclose whatever is left. Unfortunately for defendants, section 7(1)(d) itself does not authorize such a generic approach. See *National Ass'n of Criminal Defense Lawyers*, 399 Ill. App. 3d at 12 (finding it possible but unlikely "that there are some investigations in which production of the data could compromise an ongoing investigation, even with all identifying information redacted"); *Baudin*, 192 Ill. App. 3d at 536 (stating that "An agency such as a police department cannot simply take the position that, since it is involved in

investigatory work and some of its records are exempt from disclosure under the Act, every document in its possession somehow comes to share in that exemption.").

¶ 40   To be sure, the legislature has provided a statutory exemption and corresponding procedure where public bodies anticipate an undue burden. Defendants here, however, inexplicably failed to cite that exemption or comply with the corresponding statutory procedure.

¶ 41   Section 3(g) provides an exemption where "the request would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body outweighs the public interest in the information."[7] 5 ILCS 140/3(g) (West 2016). "A request that is overly broad and requires the public body to locate, review, redact and arrange for inspection a vast quantity of material that is largely unnecessary to the appellants' purpose constitutes an undue burden." *National Ass'n of Criminal Defense Lawyers*, 399 Ill. App. 3d at 17; see also *Shehadeh v. Madigan*, 2013 IL App (4th) 120742, ¶¶ 29-30 (finding that the attorney general's office, claiming a section 3(g) exemption, was not required to demonstrate the adequacy of its search where the breadth of the plaintiff's request, which revealed over 9000 documents, was evident from the face of that request). Yet, for the exemption to apply, there must be no way for the plaintiff to narrow the FOIA request and the burden on the public body must outweigh the public's interest in the information. *National Ass'n of Criminal Defense Lawyers*, 399 Ill. App. 3d at 15. Additionally, the clear and convincing burden of proof applies to section 3(g) exemptions. *Sargent Shriver National Center on Poverty Law, Inc. v. Board of Education of the City of Chicago*, 2018 IL App (1st) 171846, ¶ 32. Moreover, in order to assert a

---

[7]We note that the record does not show what interest Kelly has in obtaining these materials other than idle curiosity. See also *Castro v. Brown's Chicken & Pasta, Inc.*, 314 Ill. App. 3d 542, 554-55 (2000) (stating that in determining whether that the law enforcement investigatory privilege to discovery applies, courts balance the public benefit of keeping the investigation confidential with the civil litigant's need to obtain the information).

section 3(g) exemption, a public body must first "extend to the person making the request an opportunity to confer with it in an attempt to reduce the request to manageable proportions."[8] See 5 ILCS 140/3(g) (West 2016).

¶ 42    Defendants here did not directly assert an exemption under section 3(g) or provide Kelly the opportunity to reduce his requests. Instead, they tried to obtain the benefits of section 3(g) without satisfying its burdens. Without properly raising a section 3(g) exemption in addition to the section 7(1)(d) exemptions, defendants' affidavits and documents submitted *in camera* did not establish why even the documents they did not sort through are exempt. Moreover, they did demonstrate why this is the rare case in which nothing is left after redacting all material that is exempt under section 7(1)(d). Their affidavits were too sweeping for a section 7(1)(d) exemption standing alone.[9] Furthermore, having examined the documents tendered to the court for *in camera* review, we cannot say that even following heavy redactions, not a single sentence would remain. See *Heinrich*, 2012 IL App (2d) 110564, ¶ 19 (stating that the person requesting the documents under section 7(1) is entitled to them, even if the material remaining after redaction is not useful). Defendants' approach failed to comply with the letter and spirit of Illinois's FOIA in this instance. See *Baudin*, 192 Ill. App. 3d at 536 (stating that "An agency such as a police department cannot simply take the position that, since it is involved in investigatory work and

---

[8]Because a plaintiff desiring to test an exemption claimed under section 7 has little information at its disposal, courts have understandably required public bodies to prove exemptions through affidavits or the *in camera* review of records. *Sargent Shriver National Center on Poverty Law, Inc.*, 2018 IL App (1st) 171846, ¶ 33. A plaintiff testing an exemption claimed under section 3(g), however, has more information at its disposal "if the public body has engaged in the good-faith dialogue required by that section." *Id.* ¶ 34. When documentation of the parties' exchange is attached to the pleadings and when the public body has provided detailed justifications, a circuit court may be able to determine from the pleadings whether the public body has satisfied its burden. *Id.*

[9]We further note that Miller's comment about keeping as much information confidential as possible due to the difficulty of determining what may prove significant later was remarkably similar to a statement rejected as conclusory in *Day*. See *Day*, 388 Ill. App. 3d at 76.

some of its records are exempt from disclosure under the Act, every document in its possession somehow comes to share in that exemption.").

¶ 43    We recognize that the circuit court relied on federal law in determining how to approach the voluminous investigation file. Indeed, defendants correctly assert that Illinois courts frequently consult federal FOIA jurisprudence in resolving questions involving the Illinois FOIA. *State Journal-Register v. University of Illinois Springfield*, 2013 IL App (4th) 120881, ¶ 21. In this instance, however, key differences exist between the two statutes.

¶ 44    First, defendants have not brought to our attention any federal FOIA exemption for unduly burdensome requests. While that act does provide special provisions for dealing with voluminous requests, those provisions do not appear to create an exemption like that found in section 3(g) of Illinois's FOIA. See 5 U.S.C. § 552 (2018). Second, the federal FOIA's parallel exemptions pertaining to law enforcement meaningfully differ. Section 552(a)(8)(A) of the federal FOIA allows an agency to withhold information only after taking "reasonable steps necessary to segregate and release nonexempt information*." Id.* § 552(a)(8)(A)(ii)(II). Similarly, section 552(b), which governs the exemption for law enforcement purposes, requires that "[a]ny *reasonably segregable* portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." (Emphasis added.) *Id.* § 552(b). Section 7 of Illinois's FOIA, however, contains no parallel language. *Cf. Dickerson v. Department of Justice*, 992 F.2d 1426, 1433-34 (6th Cir. 1993) (Where the requester acknowledged the government could withhold documents on a categorical basis under section 7(a), and there was little prospect of finding reasonably segregable materials, the court rejected the requester's objection to a blanket exemption for investigatory files.). Furthermore, while the federal FOIA provides an exemption where disclosure "could" interfere with enforcement

proceedings (5 U.S.C. § 552(b)(7)(A) (2018)), the Illinois FOIA provides an exemption only where disclosure "would" interfere with enforcement proceedings or obstruct an ongoing investigation (5 ILCS 140/7(1)(d)(i), (vii) (West 2016)). See *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998) (stating that "[t]he Government need not establish that release of a particular document would actually interfere with an enforcement proceeding" (emphasis omitted)).

¶ 45    Moreover, we recognize that the United States Supreme Court in *National Labor Relations Board v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 223-24 (1978), determined that section 552(b)7 of the federal FOIA contemplates "that certain generic determinations might be made" with respect to the interference with enforcement proceedings exemption because while most of the exemptions in that subsection referred to particular cases or persons, the interference with enforcement proceedings exemption did not. Section 7(d)(i) of Illinois's FOIA, however, does refer to a particular party: "the recipient of the request." 5 ILCS 140/7(1)(d)(i), (vii) (West 2016).[10]

¶ 46    The Court in *Robbins* also stated that "although the segregability provision requires that nonexempt portions of documents be released, it does not speak to the prior question of what material is exempt." *Robbins*, 437 U.S. at 224. As stated, however, section 3(g) of Illinois's FOIA specifically refers to the undue burden defense as an "exemption." 5 ILCS 140/3(g) (West 2016); *cf. Solar Sources, Inc.*, 142 F.3d at 1037-38 (stating that under federal FOIA, the government need only show that disclosure of certain kinds of investigatory records in an ongoing case would interfere with enforcement proceedings and that the government can "justify its withholdings by reference to generic categories of documents, rather than document-by-

---

[10]While the circuit court and this court have been unable to definitively identify why our legislature added this language to section 7 of Illinois's FOIA in 2010, its purpose may have been to distance itself from *Robbins*.

document"). Illinois's legislature has clearly chosen to handle voluminous records in a different manner than its federal counterpart.

¶ 47    Because section 7(1)(d) does not itself permit blanket exemptions and because defendants did not cite or comply with section 3(g), defendants did not demonstrate that the breadth of the exemption permitted by the circuit court was appropriate here.

¶ 48    We now turn to the remedy for defendants' failure to assert section 3(g) exemptions in conjunction with section 7(1)(d) exemptions. At first blush, it may seem appropriate to prohibit defendants from raising that exemption at this juncture. Indeed, by raising an exemption in this backdoor manner, defendants denied Kelly meaningful notice that defendants intended to evade any obligation to attempt to redact the record. Defendants also denied Kelly an opportunity to narrow his request. We nonetheless find that for several reasons, it is appropriate to permit defendants to raise the exemption at this late date.

¶ 49    Defendants below reserved the right to raise additional exemptions. In addition, the interaction between section 3(g) and section 7(1)(d) in this instance presents a case of first impression. Furthermore, we find it more appropriate to give defendants the opportunity to raise a section 3(g) exemption in the first instance than to foist additional work upon the circuit court. If defendants take advantage of this opportunity, Kelly is entitled to narrow his request. If the parties are unable to reach an agreement in this regard, defendants must establish an exemption under section 3(g) or be prepared to make the extensive redactions required by section 7(1)(d). The burden belongs to defendants, not the circuit court.

¶ 50                                D. Adversarial Testing

¶ 51    Finally, we briefly observe that Kelly miscomprehends the adversarial testing contemplated by FOIA. Our supreme court has recognized that public bodies are not expected to

disclose the substance of exempt documents in their affidavits. See *Illinois Education Ass'n*, 204 Ill. 2d at 471 (stating that an "*in camera* review affords the benefits of an impartial arbiter without the risks accompanying public disclosure of the documents"). Permitting Kelly access to documents during the court's *in camera* examination would also defeat the exemptions claimed. In the context of FOIA, adversarial testing must mean something different.

¶ 52    As stated, a plaintiff is entitled to know which exemption a public body is actually raising. If a public body is not raising the undue burden exemption, a plaintiff is entitled to hold the public body to its burden of showing that it is withholding only the portions of the record that are truly exempt, either through affidavits or through materials tendered to the court for *in camera* review. Moreover, on the plaintiff's motion, before or after *in camera* inspection, "the court shall order the public body to provide an index of the records to which access has been denied." 5 ILCS 140/11(e) (West 2016). "The trial court shall require the agency to create as full a public record *as possible* concerning the nature of the documents and the justification for nondisclosure without compromising the secret nature of the information." (Emphasis added.) *Baudin*, 192 Ill. App. 3d at 542. Nothing more is required.

¶ 53                                III. CONCLUSION

¶ 54    The items tendered to the court clearly demonstrated that an investigation into Valerie's murder is ongoing within the meaning of section 7(1)(d). Kenilworth may assert a section 7(1)(d) exemption over documents held by other public bodies that participated in the investigation. Yet, section 7(1)(d) does not alone provide for the categorical assertion of the exemptions therein. Consequently, defendants have not met their burden of demonstrating that releasing any of the withheld materials would have interfered with enforcement proceedings or obstructed an investigation so as to render the entirety of their files exempt. We consequently reverse the

circuit court's order granting summary judgment in their favor and remand for further proceedings consistent with this opinion. On remand, defendants will have the opportunity to raise a section 3(g) exemption upon complying with the procedures required by that statute.

¶ 55    Reversed and remanded.