2022 IL App (1st) 210715

No. 1-21-0715

Third Division
August 17, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JONATHAN BALLEW, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19 CH 7441 |
| | ) | |
| THE CHICAGO POLICE DEPARTMENT, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Raymond W. Mitchell, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1   Jonathan Ballew, a reporter for an independent news organization, filed a complaint against

the Chicago Police Department (CPD) alleging that it had failed to comply with its obligation

under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)) to produce

documents and videos relating to a homicide that occurred in Chicago in 2018. The CPD had

disclosed certain redacted records, but claimed that other records were exempt from disclosure

due to the ongoing investigation regarding the homicide at issue. To explain why the records were exempt under section 7(1)(d)(i) and (vii) of the FOIA (5 ILCS 140/7(1)(d)(i), (vii) (West 2020)), the CPD submitted the affidavit of the investigator in charge of overseeing this investigation. The trial court found the investigator's affidavit provided clear and convincing evidence that disclosure of the records at issue would interfere with the ongoing investigation. The trial court entered summary judgment in favor of CPD and against plaintiff and subsequently denied plaintiff's motion to reconsider. Plaintiff appealed.

¶ 2                                    I. BACKGROUND

¶ 3        On March 27, 2019, plaintiff filed a FOIA request with the CPD regarding a homicide that occurred on October 1, 2018. Plaintiff requested "all investigative records including videos, photographs, police body camera footage, POD camera footage, interviews, documents and reports in any format" relating to the homicide.

¶ 4        On April 22, 2019, the CPD partially granted plaintiff's request. The CPD provided plaintiff with a redacted copy of the original case incident report but otherwise denied the request, stating that releasing any other documents or videos "would disclose information that would compromise and/or obstruct the investigators' ability to determine the veracity of the statements of said incident, thereby affecting the integrity and outcome of the investigation."

¶ 5        On June 20, 2019, plaintiff filed a three-count complaint against the CPD alleging that the CPD had willfully and intentionally violated the FOIA in failing to produce records and failing to perform an adequate search.[1]

¶ 6        On August 1, 2019, CPD filed its answer and affirmative defenses to plaintiff's complaint. It argued that the records it did not produce pursuant to plaintiff's FOIA request were exempt

---

[1]There is no indication in the record that plaintiff requested *in camera* review by the trial court.

from production under section 7 of the FOIA. 5 ILCS 140/7 (West 2020). That is, CPD argued that, at the time the records were requested, there was an open and ongoing investigation regarding this matter and "viewing the materials could alter the testimony of witnesses who had not yet been interviewed." This, according to CPD, created a "substantial likelihood of irreparable harm undermining the integrity of the investigation." The relevant exemptions appear in two subsections of section 7 of the FOIA: section 7(1)(d)(i) and 7(1)(d)(vii). These two sections exempt

"Records in the possession of any public body created in the course of administrative enforcement proceedings, and any law enforcement or correctional agency for law enforcement purposes, but only to the extent that disclosure would:

(i) interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by any law enforcement or correctional agency that is the recipient of the request[ ]

* * *

(vii) obstruct an ongoing criminal investigation by the agency that is the recipient of the request." 5 ILCS 140/7(1)(d)(i), (vii) (West 2020).

¶ 7     On August 22, 2019, plaintiff answered defendant's affirmative defenses, denying that any of the above exemptions to disclosure apply in this case.

¶ 8     Subsequently, the parties filed cross-motions for summary judgment. On October 10, 2019, plaintiff filed his motion for partial summary judgment. Plaintiff argued that defendant was under an obligation to prove, by clear and convincing evidence, that anything withheld from disclosure under the statute was exempted. Additionally, plaintiff requested defendant to

produce an index of each redacted or withheld record, pursuant to section 11(e) of the FOIA, which reads:

"On motion of the plaintiff, prior to or after in camera inspection, the court shall order the public body to provide an index of the records to which access has been denied. The index shall include the following:

(i) A description of the nature or contents of each document withheld, or each deletion from a released document, provided, however, that the public body shall not be required to disclose the information which it asserts is exempt; and

(ii) A statement of the exemption or exemptions claimed for each such deletion or withheld document." 5 ILCS 140/11(e) (West 2020).

¶ 9        On February 13, 2020, defendant filed its motion for leave to file its motion for summary judgment *instanter*. In its cross-motion for summary judgment filed therewith, defendant argued that the release of the requested materials would interfere with the pending investigations into this homicide and another purportedly related homicide. In support of its motion, defendant submitted the affidavit of Lieutenant John Roberts, who was responsible for overseeing the investigation of the homicide. Roberts averred that "releasing any of the requested materials prematurely would materially impact the investigation, especially considering that investigators are still trying to identify witnesses." He stated that a premature release would make it difficult to determine the veracity of subsequent witnesses' statements. He also averred that the release of information could place the lives of witnesses in danger.

¶ 10       On September 28, 2020, the trial court issued a written order (1) denying plaintiff's motion for partial summary judgment, (2) ordering defendant to produce an index of each redacted or withheld record pursuant to FOIA section 11(e), and (3) granting defendant's motion for

summary judgment. The trial court found that Roberts's affidavit was sufficiently clear and convincing, as required by the statute. Specifically, it relied on Roberts's attestation that "releasing information would make determining whether subsequently identified witnesses were authentic and legitimate difficult," that the violent crimes appeared to share the same hate-based motivation and execution-style *modus operandi*, and that "an 'investigation' is ongoing and underway within the meaning of FOIA." Moreover, the court distinguished the cases cited by plaintiff, as they both dealt with requests in homicide investigations that were 50 and 17 years old, respectively. In those cases, the courts found affidavits conclusory because the affiants failed to explain how investigations in cases that old are still ongoing. In this case, the trial court found that Roberts had shown that this was an ongoing investigation and that releasing information would interfere with it.

¶ 11    Plaintiff subsequently filed a motion to reconsider, which the trial court denied. This timely appeal of the trial court's denial of plaintiff's motion to reconsider follows.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, plaintiff argues that there is no blanket exception for records in an ongoing case and that CPD was required to prove by clear and convincing evidence, through detailed affidavits, that each withheld record was exempt.

¶ 14    We review summary judgment rulings *de novo*. *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404 (2009). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Country Mutual Insurance Co. v. Under Construction & Remodeling, Inc.*, 2021 IL App (1st) 210600, ¶ 23.

¶ 15    A trial court may grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). The trial court considers these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 16    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 17    The purpose of the FOIA is to open governmental records to the light of public scrutiny. *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989). "Although the FOIA outlines several exemptions to disclosure, those exemptions are read narrowly." *Day v. City of Chicago*, 388 Ill. App. 3d 70, 73 (2009). "Thus, when a public body receives a proper request for information, it must comply with that request unless one of

the narrow statutory exemptions set forth in section 7 of the Act applies." *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 463 (2003). If the public body contesting disclosure can prove that a requested document falls within a category specifically enumerated in FOIA section 7, "the document shall be *per se* exempt from inspection and copying and 'no further inquiry by the court is necessary.' " *Chicago Alliance for Neighborhood Safety v. City of Chicago*, 348 Ill. App. 3d 188, 199 (2004) (quoting *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 408 (1997)). Under *the per se* analysis, any documents that fit within one of the specifically enumerated statutory exemptions are absolutely exempt from disclosure. *Copley Press, Inc. v. Board of Education for Peoria School District No. 150*, 359 Ill. App. 3d 321, 324 (2005).

¶ 18        The public body asserting an exemption must prove by clear and convincing evidence that the withheld records are exempt. 5 ILCS 140/1.2 (West 2020). The public body must provide a detailed justification for its claim of exemption and address the requested documents specifically and in a manner that allows for adequate adversary testing. *Illinois Education Ass'n*, 204 Ill. 2d at 464.

¶ 19        The evidence may be presented in the form of an affidavit. "A public body may meet its burden of proving a statutory exemption through affidavits, in which case the court need not review the documents at issue *in camera*." *Kelly v. Village of Kenilworth*, 2019 IL App (1st) 170780, ¶ 23 (citing *Illinois Education Ass'n*, 204 Ill. 2d at 469). Affidavits are accorded a presumption of good faith. *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 997 (2007). "Affidavits are insufficient if the public body presents claims that are conclusory, overly vague or sweeping, or merely recite statutory standards." *Kelly*, 2019 IL App (1st) 170780, ¶ 24 (citing *Day*, 388 Ill. App. 3d at 74).

¶ 20    In the case at bar, defendant relies on sections 7(1)(d)(i) and 7(1)(d)(vii), which specifically exempt records that, if disclosed, would "interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by any law enforcement or correctional agency that is the recipient of the request" or "obstruct an ongoing criminal investigation by the agency that is the recipient of the request," respectively. In support of this contention, defendants submitted the affidavit of Lieutenant John Roberts, the investigator in charge of the homicide investigation. Our task is to determine whether Roberts's affidavit proves that the withheld documents fall within at least one of the two above exempted categories.

¶ 21    In his affidavit, Roberts explained that the homicide investigation was ongoing and that the offender remained at large. Moreover, he stated that the outcome of the investigation may be jeopardized if details of the investigation, investigative technique, and evidence were to be released. The homicide underlying the FOIA request in the case at bar appears to be linked to another unsolved homicide, and both appear to be hate-driven with similar *modi operandi*. Thus, according to Roberts, "releasing any of the requested materials before the investigation was complete would materially impact the investigation, especially considering that the investigators were still trying to identify witnesses, and premature release would make the investigators' determination of the veracity of any subsequent witnesses much more difficult." Finally, he explained that, in cases that have received significant media interest, "it is critical that the investigators be able to determine whether a purported witnesses actually has something to further aid the investigation, and is not simply using publically [*sic*] available information in a misguided attempt to aid or otherwise mislead the investigators, wasting finite investigative resources."

¶ 22    We find Roberts's affidavit provides clear and convincing evidence that the withheld records are exempt under both sections 7(1)(d)(i) and 7(1)(d)(vii). First, Roberts has explained that the investigation is open and ongoing, and "the offender remains unidentified and at large." According to Roberts, "assigned investigators are still attempting to identify additional witnesses, collect additional evidence and apprehend the suspect." These statements satisfy the "pending" and "ongoing" language of the exemptions found in sections 7(1)(d)(i) and 7(1)(d)(vii).

¶ 23    Second, Roberts has explained how disclosure of the withheld documents would interfere with and obstruct the investigation. According to Roberts, releasing the withheld documents would mean releasing information that would make it more difficult for investigators to determine the veracity of statements of any potential witnesses who come forth after the release. This is especially the case in situations such as this one that have attracted significant coverage by the media; as more members of the public learn about the case, the possibility of obstructive behavior intended to misguide investigative efforts increases. Finally, as the homicide in this case is potentially linked with another (unsolved) violent homicide, release of information could place witnesses in danger or deter potential witnesses from coming forth.

¶ 24    Plaintiff argues that "there is no blanket exemption for records simply because an investigation is ongoing." We agree. "Understandably, defendants would prefer to claim exemptions over their entire files rather than sift through thousands of documents to redact exempt matters and disclose whatever is left. Unfortunately for defendants, section 7(1)(d) itself does not authorize such a generic approach." *Kelly*, 2019 IL App (1st) 170780, ¶ 39. However, nothing in the record in this case suggests that CPD has attempted to assert a blanket exemption. CPD has produced the original case incident report and explained, through the

affidavit of the supervising investigator of the homicide regarding which documents have been requested, why the other responsive documents are exempt. There is nothing to indicate that CPD has refused to review all responsive records before asserting this exemption.

¶ 25    Contrary to plaintiff's argument, nothing in the cases he has cited mandates document-by-document explanations regarding exemption. In *Kelly*, this court held that FOIA recipients, which included local government and police at various levels, had not shown that the voluminous 20,000-page withheld records relating to a nearly 50-year-old unsolved homicide were exempt from disclosure. *Kelly*, 2019 IL App (1st) 170780. The FOIA recipient there argued that "disclosure would alert targets to the existence and nature of the investigation, allow prime suspects to tamper with evidence, discourage individuals from sharing information with investigators, and make it difficult to address leads and confessions." *Kelly*, 2019 IL App (1st) 170780, ¶ 9. Moreover, "[g]oing through each page of the investigative file 'could potentially require hundreds of hours to review, analyze and redact information.' " *Kelly*, 2019 IL App (1st) 170780, ¶ 9. In that case, not only did the FOIA recipients provide a generic explanation of why the records are purportedly exempt but essentially admitted to not having even reviewed the records. Thus, it appears that the actual reason for withholding in that case was that the records were too burdensome to review. Here, the investigator has explained that the records are exempt because their release would obstruct an ongoing investigation, not because the records would be too burdensome to produce. Accordingly, that case is distinguishable from the case at bar.

¶ 26    *Day* is distinguishable for a different reason. In that case, none of the affidavits submitted by the FOIA recipients in support of an exemption were found to establish that the investigation of a 17-year-old murder case was "ongoing," as the affidavits stated only generally that the

" 'investigation is still ongoing, as to certain aspects of the investigation other than Mr. Day's arrest and conviction.' " *Day*, 388 Ill. App. 3d at 75-76. In other words, the suspect was apprehended, convicted, and had already served over a decade in prison for the murder at the time of the FOIA request. Moreover, none of the three affiants in that case explained in any detail how the release of any documents would have obstructed the investigation of the murder. *Day*, 388 Ill. App. 3d at 76. The court there found that the "sweeping generalities" of the affidavits did not lend themselves to " 'adequate adversary testing.' " *Day*, 388 Ill. App. 3d at 77. In the case at bar, Roberts has established that the investigation is ongoing and has provided sufficient details that would lend themselves to adversary testing. For instance, Roberts could be questioned about whether there are ways to safeguard witnesses and potential witnesses such that their safety would not be compromised, should the withheld records in this investigation be released publicly.

¶ 27    In sum, Roberts's affidavit has shown that the investigation here is ongoing, and it explained how a premature release of records would obstruct the investigation. We find that CPD has met its burden in showing, by clear and convincing evidence, that the withheld records are exempt under the FOIA.

¶ 28                                III. CONCLUSION

¶ 29    For the foregoing reasons, we affirm the trial court's judgment.

¶ 30    Affirmed.

11

*Ballew v. Chicago Police Department*, 2022 IL App (1st) 210715

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-7441; the Hon. Raymond W. Mitchell, Judge, presiding. |
| **Attorneys for Appellant:** | Joshua Burday, Matthew Topic, Josh Loevy, Merrick Wayne, and Shelley Geiszler, of Loevy & Loevy, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, Tara D. Kennedy, Elizabeth Mary Tisher, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), for appellee. |