2021 IL App (1st) 192073

No. 1-19-2073

Second Division
April 13, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LUCY PARSONS LABS, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18 CH 15005 |
| | ) | |
| THE CITY OF CHICAGO MAYOR'S | ) | |
| OFFICE, | ) | Honorable |
| | ) | Anna M. Loftus |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from a request for records submitted by plaintiff, Lucy Parsons Labs

(LPL), under Illinois's Freedom of Information Act (Act) (5 ILCS 140/1 *et seq.* (West 2018)). LPL

is a self-described "collaboration between data scientists, transparency activists, artists, [and]

technologists working at the intersection of digital rights and on-the-street issues." As relevant to

this case, LPL sought from defendant, the City of Chicago Mayor's Office (City), a copy of the

City's "action plan" (Plan) regarding the public response to the verdict in the highly publicized

murder trial of former Chicago police officer Jason Van Dyke. The City denied the request, and LPL filed a complaint in the circuit court, seeking an order to compel production of the Plan. After a hearing on the parties' cross-motions for summary judgment, the circuit court granted summary judgment for the City, finding the entirety of the Plan exempt from disclosure under section 7(1)(v) of the Act (*id.* § 7(1)(v)). LPL now appeals, arguing that the circuit court erred in finding the entire Plan exempt. For the following reasons, we agree with LPL and therefore remand to the circuit court for further proceedings.

¶ 2                                I. BACKGROUND

¶ 3      On October 9, 2018, LPL submitted a request under the Act for "[a] copy of the [C]ity's 'action plan' created for Friday October 5, 2018 regarding public response to the verdict in the trial of Jason Van Dyke." The request referenced a report from the *New York Times* that the City had developed a 150-page action plan for "managing unrest in the case of an acquittal." The City denied LPL's request, citing section 7(1)(v) of the Act. The City explained that it denied the request because the Plan was "designed to respond to a potential attack upon the community's population, including but not limited to details regarding the deployment of specialized resources, call numbers, critical staff positioning and procedures for the handling and preparedness for operations and emergency procedures." The City also stated that "[r]eleasing this information could enable terrorists and criminals to know in advance where police, fire and other valuable [C]ity resources will be," thereby allowing such people to "effect a strategy in advance for undermining or otherwise targeting public safety efforts."

¶ 4      On December 3, 2018, LPL filed a complaint in the circuit court, seeking an order requiring the City to produce the action plan. The City filed an answer, again contending that the Plan was exempt from disclosure under section 7(1)(v).

¶ 5    The parties filed cross-motions for summary judgment. Attached to the City's motion were affidavits from two Chicago Police Department officials involved in drafting the Plan: Anthony Riccio, the First Deputy Superintendent, and Jill Stevens, the Commanding Officer of the Special Events and Liaison Unit. Riccio and Stevens averred that the plan "consists of information regarding the tactical operations of the event" such as "the deployment of specialized resources, call numbers, critical staff positioning, and procedures for handling and preparedness of operations and emergency situations." According to Riccio and Stevens, the plan also "describes assembly areas, command posts, and 'hot spots,' " which are areas that may need additional resources or personnel during large scale events. Riccio and Stevens further averred that making such information public would endanger public safety by allowing "terrorists and criminals to know in advance where police, fire and other valuable [C]ity resources will be located." Lastly, Riccio and Stevens stated that the Plan should not be released even after the Van Dyke verdict because much of the information in the Plan was likely to be reused for future events.

¶ 6    In response, LPL argued that (1) section 7(1)(v) did not apply to the action plan because it was "not an anti-terrorism plan" and (2) to the extent that section 7(1)(v) applied, the City had not shown that "every single word on every page of the action plan is exempt under [s]ection 7(1)(v)." Specifically, LPL contended that, even if the Plan contained some exempt information about security and emergency tactics, the City was still required to produce any nonexempt contents of the Plan, such as "any general background information, introduction, or summary." LPL also argued that "[a]ny table of contents or index," "[a]ny headers or titles generally describing the content of sections," and "[a]ny sections defining words and explaining what various terms such as 'command posts' or 'hot spots' mean are not exempt."

¶ 7    After a hearing on the parties' cross-motions, the circuit court granted summary judgment for the City, ruling that "the plan as a whole is exempt" under section 7(1)(v) and that the City therefore had "no duty to redact" exempt information and produce nonexempt information. The court issued a written order dismissing the case on September 19, 2019.

¶ 8    This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10    The issue on appeal is whether the requested Plan is exempt from production as a whole under section 7(1)(v) of the Act or whether only a portion of the Plan is exempt such that the City was required to redact any exempt material and produce the rest.

¶ 11    Whether a document is exempt from disclosure under the Act is a matter of statutory construction subject to *de novo* review. *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404 (2009). *De novo* review is also the standard because this appeal arises from an order granting summary judgment. *Id.* Summary judgment is warranted only where it is clear that—after reviewing the pleadings, depositions, and affidavits on file in the light most favorable to the nonmoving party—there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kopchar v. City of Chicago*, 395 Ill. App. 3d 762, 766 (2009).

¶ 12    "The purpose of the [Act] is to open governmental records to the light of public scrutiny." *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989). Under the Act, public records are presumed to be open and accessible, and the relevant public body "shall make [them] available to any person" upon request subject only to the exceptions provided in sections 7 and 8.5 of the Act. 5 ILCS 140/3(a) (West 2018); see *id.* §§ 7, 8.5. The Act is to be liberally construed in favor of disclosure, and the exceptions must be construed narrowly so as not

to defeat the statutory purpose of governmental transparency. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 25. Where, as here, the requesting party challenges the denial of a request in court, the public body bears the burden of demonstrating that the requested records fall within the claimed exception through clear and convincing evidence. *Stern*, 233 Ill. 2d at 406.

¶ 13    The relevant exception in this case is contained in section 7(1)(v) of the Act, which applies to

> "[v]ulnerability assessments, security measures, and response policies or plans that are designed to identify, prevent, or respond to potential attacks upon a community's population or systems, facilities, or installations, the destruction or contamination of which would constitute a clear and present danger to the health or safety of the community, but only to the extent that disclosure could reasonably be expected to jeopardize the effectiveness of the measures or the safety of the personnel who implement them or the public. Information exempt under this item may include such things as details pertaining to the mobilization or deployment of personnel or equipment, to the operation of communication systems or protocols, or to tactical operations." 5 ILCS 140/7(1)(v) (West 2018).

¶ 14    We find that the City met its burden in establishing that some parts of the requested Plan were exempt under section 7(1)(v). For example, Riccio and Stevens averred that the Plan was created to respond to a potential attack on the community and included such things as "the deployment of specialized resources, call numbers, critical staff positioning, and procedures for handling and preparedness of operations and emergency situations." This is core information exempt under section 7(1)(v).

¶ 15    However, the City's position that the presence of this information necessarily makes the entire Plan exempt is untenable. When interpreting the Act, like any statute, we begin with its plain language. *Special Prosecutor*, 2019 IL 122949, ¶ 23. Critically, the plain language of section 7(1)(v) states that response plans are exempt for disclosure, "*but only to the extent* that disclosure could reasonably be expected to jeopardize the effectiveness of the measures or the safety of the personnel who implement them or the public." (Emphasis added.) 5 ILCS 140/7(1)(v) (West 2018). Thus, section 7(1)(v) plainly contemplates that some information in a response plan might be exempt, but only to the extent necessary to ensure public safety and the success of the plan.

¶ 16    Nevertheless, the City argues that the phrase "to the extent that" in section 7(1)(v) should read as "where," thus "limit[ing] the scope of section 7(1)(v) to security plans, but only where disclosure would jeopardize a plan's efficacy or a person's safety."[1] Essentially, the City proposes replacing "to the extent that" with "if." However, we decline to rewrite the statute in this way or depart from the plain meaning by adding a limitation not intended by the legislature. See *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009) ("It is a cardinal rule of statutory construction that we cannot rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations, or conditions not expressed by the legislature.").

¶ 17    Additionally, although we need not resort to other cannons of statutory construction where, as here, the language of the statute is clear and unambiguous, we note that the City's interpretation of section 7(1)(v) would render the "but only to the extent" clause meaningless. *Policemen's Benevolent Labor Committee v. City of Sparta*, 2020 IL 125508, ¶¶ 14 ("In interpreting a statute, a court should not render any part meaningless or superfluous."). It is difficult to imagine any

---

[1] This argument was contained in the City's sur-reply, which we granted the City leave to file on March 22, 2021.

security measures or response plan for an attack where publicly disclosing the details of resource and personnel deployment beforehand would not undermine either the effectiveness of the plan or the safety of those who implement it. Thus, under the City's construction, response plans will effectively be exempt wholesale in every case, notwithstanding the "but only to the extent" clause in the statute.

¶ 18    On the other hand, our interpretation that the information in a response plan is exempt only to the extent it is critical to the overall safety and effectiveness of the plan not only conforms to the plain language of section 7(1)(v) but also to the fundamental principle that courts should construe the Act liberally in favor of transparency and apply the exemptions to disclosure narrowly. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 423-24 (2006). Additionally, even if we were to find the language of the "but only to the extent" clause to be ambiguous, we would still resolve all doubts in favor of disclosure in light of the public policy underlying the Act. *Dumke v. City of Chicago*, 2013 IL App (1st) 121668, ¶ 23.

¶ 19    Having determined that the requested Plan is likely a mix of both exempt and nonexempt information, we conclude that the circuit court erred in granting summary judgment for the City. Our supreme court has explained that "the mere 'commingling' of exempt and nonexempt material does not prevent a public body from disclosing the nonexempt portion of the record." *Stern*, 233 Ill. 2d at 412. Rather, the Act itself provides that, when a requestor seeks a record that contains both exempt and nonexempt information, "the public body may elect to redact the information that is exempt" and "shall make the remaining information available for inspection and copying." 5 ILCS 140/7(1) (West 2018). Notably, the public body's duty to redact the exempt information and produce the nonexempt information remains even where the redactions would leave the requestor with nothing useful. *Heinrich v. White*, 2012 IL App (2d) 110564, ¶¶ 19, 24 (reversing the grant

of summary judgment for the defendant and remanding to determine whether the requestor still wanted the redacted records where the information in the requested records was largely, but not entirely, exempt). While this may well be the case here, we agree with LPL that the City has not met its burden to show that redaction of the Plan should not be required. Summary judgment was therefore unwarranted at this stage.

¶ 20    Our disposition is consistent with the somewhat analogous case of *Kelly v. Village of Kenilworth*, 2019 IL App (1st) 170780. There, this court interpreted section 7(1)(d) of the Act, which, similar to the structure of section 7(1)(v), exempts records created for law enforcement purposes "but only to the extent" that disclosure would interfere with enforcement proceedings or obstruct an ongoing investigation. 5 ILCS 10/7(1)(d) (West 2018). We found that although the records in question pertained to an ongoing investigation, the statute did not support the defendant's "generic approach" of claiming total exemption, even where "at least a significant portion of their investigative files would interfere with law enforcement proceedings or obstruct and ongoing criminal investigation." *Kelly*, 2019 IL App (1st) 170780, ¶ 39. Consequently, we reversed the grant of summary judgment in the defendant's favor and remanded so that the defendant could either (1) prove that redacting the "thousands of documents" in question was unduly burdensome or (2) "make the extensive redactions required by section 7(1)(d)." *Id.* ¶¶ 39, 50.

¶ 21    Accordingly, we reverse the circuit court's grant of summary judgment and remand so that the City may redact from the Plan any information that "could reasonably be expected to jeopardize the effectiveness of the measures or the safety of the personnel who implement them or the public," and then produce whatever remains unless another exemption applies. We also note that, while not required in every case, the circuit court has the option of reviewing the Plan *in camera* to determine

which redactions are necessary and which information is nonexempt. 5 ILCS 140/11(f) (West 2018) (stating that the court "shall conduct such in camera examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of this Act"); *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 470-71 (2003) ("*[I]n camera* review by the circuit court is the most effective way for the public body to objectively demonstrate that the exemption claimed does, in fact, apply.").

¶ 22                                III. CONCLUSION

¶ 23    For the reasons stated, we reverse the circuit's grant of summary judgment for the City and remand for further proceedings not inconsistent with this opinion.

¶ 24    Reversed and remanded.

**No. 1-19-2073**

| | |
|---|---|
| **Cite as:** | *Lucy Parsons Labs v. City of Chicago Mayor's Office*, 2021 IL App (1st) 192073 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-15005; the Hon. Anna M. Loftus, Judge, presiding. |
| **Attorneys for Appellant:** | Joshua Burday, Matthew Topic, and Merrick Wayne, of Loevy & Loevy, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Celia Meza, Acting Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee. |