2025 IL App (1st) 240629

No. 1-24-0629

Opinion filed July 7, 2025

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| NBC SUBSIDIARY (WMAQ-TV) LLC, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | No. 22 CH 1297 |
| THE CHICAGO POLICE DEPARTMENT and THE | ) | |
| OFFICE OF EMERGENCY MANAGEMENT AND | ) | The Honorable |
| COMMUNICATIONS, | ) | Joel Chupack, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, NBC Subsidiary (WMAQ-TV) LLC, appeals from the trial court's entry of summary judgment in favor of the defendants, the Chicago Police Department (CPD) and the Office of Emergency Management and Communications (OEMC), on the plaintiff's complaint seeking to enforce compliance with a request for records under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2022)). We affirm.

¶ 2                                    BACKGROUND

¶ 3　　　　On January 6, 2022, an investigative producer working for the plaintiff submitted a FOIA request to CPD, seeking "any and all documentation related to the fatal hit-and-run crash that occurred on [August 26, 2021,] at 300 N. Central Park Ave. (RD# JE350872), including any surveillance video, incident reports, witness statements and any other materials related to the crash." On January 7, 2022, CPD responded and denied the plaintiff's FOIA request. In summary, CPD's response stated that (1) the major accident investigation unit's reports and the traffic crash report were available through non-FOIA means, (2) responsive body camera video footage had been identified, but it was not subject to disclosure under FOIA pursuant to section 10-20(b) of the Law Enforcement Officer-Worn Body Camera Act (Body Camera Act) (50 ILCS 706/10-20(b) (West 2022)), and (3) additional responsive records were exempt on the grounds that disclosure of them would interfere with pending or anticipated law enforcement proceedings or would obstruct an ongoing criminal investigation, pursuant to section 7(1)(d)(i) and (vii) of FOIA (5 ILCS 140/7(1)(d)(i), (vii) (West 2022)). The plaintiff thereafter obtained an unredacted copy of the traffic crash report for this collision.[1]

¶ 4　　　　On January 10, 2022, the plaintiff submitted a FOIA request to OEMC requesting "any and all video recorded via POD [(police observation device)] cameras or surveillance cameras between 3:30 p.m. and 5:30 p.m. on [August 26, 2021], in the area of the fatal hit-and-run crash that occurred at 300 N. Central Park Ave (RD# JE350872)." On January 18, 2022, OEMC responded and denied the plaintiff's FOIA request. Pertinent to this appeal, OEMC's response cited section 7(1)(d)(i) of FOIA (*id.* § 7(1)(d)(i)) as its basis for denial. It stated that releasing the requested information would impede CPD's open investigation into the incident and give those involved

---

[1]Neither side discloses whether the plaintiff was eventually able to obtain any reports from the major accident investigation unit, but such reports are not a subject of this appeal.

insight into the direction of that investigation and an ability to threaten witnesses or destroy evidence.

¶ 5        On February 15, 2022, the plaintiff filed the present cause of action against the defendants seeking to enforce compliance with the two FOIA requests above. Once the parties were at issue on the pleadings, cross-motions for summary judgment were filed and briefed. As part of that briefing, the defendants filed an index of records that were responsive to the plaintiff's request but withheld as exempt from disclosure. See *id.* § 11(e). According to that index, the withheld records in this case comprise (1) footage from five police officers' body-worn cameras, which show the victim and witnesses and which record witnesses' statements concerning the suspect, the suspect's vehicle, and the witnesses' personal information (*i.e.*, names, phone numbers, and birth dates); (2) records obtained from T-Mobile in response to a search warrant for the suspect's cell phone records (described as call log, data sessions, and interpretations of call log, subscribers, and time stamp); (3) footage from three POD cameras in the area at the time of the collision; and (4) a PowerPoint presentation that CPD prepared on the progress of the investigation (as of a date not disclosed), including an analysis of the T-Mobile records and POD footage.

¶ 6        The defendants argued in their motion for summary judgment that all of the records above were exempt from disclosure under section 7(1)(d)(i) of FOIA (*id.* § 7(1)(d)(i)), which exempts records in the possession of any law enforcement agency for law enforcement purposes, "but only to the extent that disclosure would *** interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by any law enforcement *** agency that is the recipient of the request." In support of their assertion that disclosure of the above records would interfere with CPD's then-ongoing investigation into the hit-and-run collision at issue, the defendants submitted the affidavit of Officer Paul Niezabitowski. As this affidavit is the primary

basis of the parties' arguments on appeal, we set forth its contents in detail.

¶ 7    Officer Niezabitowski's affidavit established the following facts. He is employed by CPD as an investigator with the major accident investigation unit, and he assisted in investigation of the fatal hit-and-run collision at issue. His duties in the case included collecting and reviewing available evidence. His opinion is that the current investigation would be compromised by the release of (1) videos, including from officers' body-worn cameras and POD cameras; (2) records from T-Mobile responsive to a search warrant for cell phone records; and (3) a PowerPoint presentation analyzing the T-Mobile records and POD camera video footage. As of January 7, 2022, and January 18, 2022, the investigation of the incident was open and ongoing; no arrests had been made, and the perpetrator remained at large on both dates. Based on his experience, it is not uncommon for a hit-and-run investigation to take longer than five months to close or otherwise reach a point where release of any associated records would not interfere with the investigation; this is due to the various investigative steps which require time to complete (*e.g.*, forensic evidence testing), and the need to comply with requests by the Cook County State's Attorney's Office.

¶ 8    Officer Niezabitowski's affidavit went on to state that in this instance, the investigation took time to progress because it required the major accident investigation unit to locate the suspect vehicle, swab it for DNA on both the steering wheel and undercarriage, send those swabs to the Illinois State Police for testing, receive the results of the testing back, send additional evidence from the suspect vehicle to the Illinois State Police to gain greater evidence of who was driving it at the time of the crash, and obtain court approval for the above searches and seizures, as well as for a grand jury to subpoena T-Mobile for cell phone records of the suspect's phone. He stated that investigations are designed to remain out of the public eye until warrants are issued and arrests are made; this enables the investigation to occur without undue interference, such as changing of

witness statements or suspects evading detection and capture. Producing records responsive to the plaintiff's FOIA requests would have materially impacted the investigation, as disclosure would reveal the nature and progress of the investigation and descriptions of potential suspects. If offenders determine from the news media the extent of evidence police have against them, they can then take steps to evade detection or capture, including fleeing the jurisdiction. It can also allow suspects time to create alibis and better fabricate evidence.

¶ 9        Officer Niezabitowski stated that he was actively attempting to locate and speak with a specific witness who could identify the driver of the vehicle. In his experience, releasing witnesses' likenesses, identifying information, and statements reduces civilian cooperation with police and hampers investigations. If witness statements are made public during an investigation prior to arrests being made, it places witnesses at risk of harm or retaliation, which makes them less likely to cooperate with investigators. Publicly releasing investigation details could also alter the memory or testimony of witnesses who have not yet been interviewed.

¶ 10       Finally, as to the specific categories of records at issue in this case, Officer Niezabitowski's affidavit stated as follows:

> "19. In the current case, the disclosure of the officer worn body camera video would have interfered with the investigation. The videos included witness identities and interviews. As part of those interviews, witnesses gave descriptions of the suspect and the suspect vehicle. Release of these videos would put these witnesses at risk of harm or retaliation, particularly considering the criminal history of the primary suspect and could jeopardize the investigation.

> 20. In my experience, if the body worn camera videos were released and published in the current case, these witnesses and others would see the interviews. Their memories could

be altered, and the value of any subsequent interviews could be undermined.

21. The POD camera videos show the suspect vehicle driving in the vicinity of the crash at the time of the crash. If these videos were released, the suspect would see their vehicle appears in all the videos, would know that they are under investigation, and would attempt to evade capture. The release could also alter the memories of witnesses, as the paths and direction of travel of the suspect vehicle is not publicly known.

22. The release of the T-Mobile records would interfere with the investigation. The records were for the primary suspect's cell phone records. Disclosing those records would reveal the name of the suspect, who has not yet been arrested. The suspect would see this disclosure, know that they are under investigation, and could attempt to evade capture. More importantly, and as explained above, the phone records were obtained as a result of Grand Jury Subpoenas and cannot publicly be disclosed absent a court order.

23. The public release of the PowerPoint analysis of the T-Mobile records and the POD videos would similarly undermine the investigation. The PowerPoint shows how the suspect's cell phone was in the vicinity of the crash at the time of the crash. The POD video shows how the suspect's vehicle was also in the vicinity at that time ***. Similarly, if the PowerPoint were publicly released, the suspect would know that CPD is aware that their vehicle and that their phone was in the area of the crash at the time it occurred. The suspect would then know that they are being investigated and could attempt to evade capture."

¶ 11    The trial court entered two orders in this case that are the subject of appeal. By these orders, it granted the defendants' cross-motion for summary judgment, denied the plaintiff's motion for partial summary judgment, and denied the plaintiff's motion to reconsider those summary judgment rulings. With greater elaboration in its order denying the motion to reconsider, the trial

court explained that it found that the defendants had met their burden to establish that all withheld records were exempt from disclosure on the basis that the disclosure of them would interfere with an ongoing police investigation concerning the hit-and-run collision at issue. Also, specifically concerning the video footage from officers' body-worn cameras, the trial court ruled that this was exempt from disclosure through FOIA under section 10-20(b) of the Body Camera Act (50 ILCS 706/10-20(b) (West 2022)). The plaintiff filed a notice of appeal as to these rulings.

¶ 12                                    ANALYSIS

¶ 13        This appeal involves the trial court's entry of summary judgment in a FOIA case. Section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2022)) provides that summary judgment shall be rendered without delay if the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Once the records at issue are properly identified, FOIA cases are generally appropriate for resolution through summary judgment. *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 997 (2007). We review *de novo* both questions as to the propriety of summary judgment and as to whether the records of a public body are exempt from disclosure under FOIA. *Lucy Parsons Labs v. City of Chicago Mayor's Office*, 2021 IL App (1st) 192073, ¶ 11.

¶ 14        FOIA provides that all records in the custody or possession of a public body are presumed to be open to inspection or copying. 5 ILCS 140/1.2 (West 2022). A public body must comply with a proper request for information unless the records or information is subject to one of the exemptions in section 7 of FOIA (*id.* § 7). *Chapman v. Chicago Department of Finance*, 2023 IL 128300, ¶ 32. These exemptions are to be read narrowly. *Id.* Relevant here is the exemption for "[r]ecords in the possession of *** any law enforcement *** agency for law enforcement purposes,

but only to the extent that disclosure would *** interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by any law enforcement *** agency that is the recipient of the request." 5 ILCS 140/7(1)(d)(i) (West 2022). A public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt. *Id.* § 1.2. To meet this burden and assist the court in making its determinations, the public body must provide a *detailed* justification for its claim of exemption, addressing the requested documents specifically and in a manner that allows for adequate adversary testing. *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 464 (2003). Accordingly, affidavits submitted for this purpose that are conclusory, that merely recite statutory standards, or that are too vague or sweeping will not suffice to satisfy this burden. *Id.* at 469. We review the propriety of withholding records pursuant to a claim of exemption under circumstances as they existed on the date the public body made its decision (here, January 7, 2022, and January 18, 2022). *Green v. Chicago Police Department*, 2022 IL 127229, ¶ 3.

¶ 15       In this appeal, the heart of the plaintiff's argument is that Officer Niezabitowski's affidavit was insufficient to satisfy the defendants' burden of proving by clear and convincing evidence that release of all the withheld records would interfere with pending or reasonably contemplated law enforcement proceedings.[2] See 5 ILCS 140/7(1)(d)(i) (West 2022). The plaintiff argues that his affidavit is simply a repetition of the affidavit statements that this court found sufficient in *Ballew v. Chicago Police Department*, 2022 IL App (1st) 210715, without any meaningful independent application to the records of this case. As such, the plaintiff argues, the statements in it upon which the defendants rely are generic, vague, and untethered to any specific records actually being

---

[2]The plaintiff also discusses section 7(1)(d)(vii) of FOIA (5 ILCS 140/7(1)(d)(vii) (West 2022)), which exempts from disclosure law enforcement records to the extent it would "obstruct an ongoing criminal investigation." However, as the defendants make no argument that the records at issue are exempt under section 7(1)(d)(vii), we do not address this separate exemption.

withheld in this instance. The plaintiff also characterizes the defendants as improperly claiming a "blanket" exemption over all responsive records, instead of reviewing them all to determine what information within them can be disclosed, at least in redacted form. The plaintiff further contends that the defendants have voluntarily made public much of the information sought here, such as the witnesses' full names and contact information included in the traffic crash report and the still photos and license plate number of the suspect vehicle included in a community alert issued the day after the collision. The plaintiff argues that the extent of information that the defendants have voluntarily disclosed undermines their argument that disclosing much of the same information through a FOIA request would interfere with an ongoing investigation.

¶ 16    In response, the defendants argue that they met their burden of showing that all the responsive records were properly withheld as exempt from disclosure under section 7(1)(d)(i), because Officer Niezabitowski's affidavit sets forth in detail how disclosing the responsive records at issue would have interfered with CPD's ongoing investigation into this particular hit-and-run collision. They contend that the plaintiff is grossly misrepresenting the extent of case-specific detail included in Officer Niezabitowski's affidavit, and they assert that his affidavit goes beyond what this court held sufficient in *Ballew*. They argue that this is not a case in which a blanket exemption was asserted over all records without any meaningful review of them to determine whether anything within them needed to be disclosed in redacted form, and nothing supports the argument that the defendants undertook an inadequate review of records here. Finally, they argue that the information made public in the traffic crash report or the community alert was far less detailed than the records requested by the plaintiff here, which include extensive video footage and details about the crash and ensuing police investigation. We agree with the defendants' arguments.

¶ 17    In *Ballew*, the CPD partially denied a FOIA request by a reporter seeking records pertaining

to a homicide that had occurred six months earlier. *Id.* ¶¶ 3-4. This court held that CPD had satisfied its burden of explaining how disclosure of the withheld documents would interfere with its pending investigation into the homicide by its submission of the affidavit of the investigator in charge of it, Lieutenant John Roberts. *Id.* ¶¶ 20-23, 27. The court summarized the contents of Roberts's affidavit as follows:

> "In his affidavit, Roberts explained that the homicide investigation was ongoing and that the offender remained at large. Moreover, he stated that the outcome of the investigation may be jeopardized if details of the investigation, investigative technique, and evidence were to be released. The homicide underlying the FOIA request in the case at bar appears to be linked to another unsolved homicide, and both appear to be hate-driven with similar *modi operandi.* Thus, according to Roberts, 'releasing any of the requested materials before the investigation was complete would materially impact the investigation, especially considering that the investigators were still trying to identify witnesses, and premature release would make the investigators' determination of the veracity of any subsequent witnesses much more difficult.' Finally, he explained that, in cases that have received significant media interest, 'it is critical that the investigators be able to determine whether a purported witnesses [*sic*] actually has something to further aid the investigation, and is not simply using [publicly] available information in a misguided attempt to aid or otherwise mislead the investigators, wasting finite investigative resources.' " *Id.* ¶ 21.

¶ 18        A simple comparison of the statements in Officer Niezabitowski's affidavit above (*supra* ¶¶ 7-10) to the summary of Lieutenant Roberts's affidavit in *Ballew* leads us to reject the plaintiff's argument that Officer Niezabitowski's affidavit is a generic or vague duplication of the points in Roberts's affidavit with no application to the records or facts of this case. Instead, we agree with

the defendants that his affidavit contains sufficient case-specific detail about why the disclosure of the records at issue would interfere with an ongoing police investigation.

¶ 19    Officer Niezabitowski's affidavit explained that, as of the operative dates of the FOIA request five months after the collision at issue, CPD was continuing to investigate to identify the driver of the suspect vehicle. This specifically included attempting to locate and speak to a particular witness who could identify the driver. He explained that disclosing the body camera footage, which included witnesses' identities and interviews wherein they described the suspect and the suspect vehicle, would place those witnesses at risk of harm or retaliation (particularly in light of the primary suspect's criminal history) and could jeopardize the investigation. Publication of these videos could also alter the memories of other witnesses, thereby undermining the value of any subsequent interviews. He explained that releasing the POD camera footage, which showed the suspect vehicle driving in the vicinity, would alert the suspect to the fact that they were under investigation and allow the suspect to evade capture. It could likewise alter the memory of witnesses, as paths and direction of travel are not publicly known. He explained that release of the T-Mobile records, which were for the primary suspect's cell phone records, would reveal the name of the suspect, again alerting that person that they were under investigation and allowing them to evade capture. Finally, he explained that release of the PowerPoint document, which analyzed the T-Mobile records and POD camera footage to show how the suspect's cell phone and vehicle were in the vicinity at the time of the collision, would alert the suspect to the evidence against them and allow them to evade capture. He added that disclosure of the records during an ongoing investigation may also allow the suspect time to create an alibi or better fabricate evidence. We find the statements in Officer Niezabitowski's affidavit to be sufficient to show by clear and convincing evidence that these records are exempt from disclosure under section 7(1)(d)(i).

¶ 20    Further, we find no support for the plaintiff's argument that the defendants improperly claimed a "blanket" exemption over all responsive records without reviewing them all to determine whether any information within them could be disclosed, at least in redacted form. This court rejected a nearly identical argument in *Ballew*. There, the court found that CPD had produced an incident report and shown through the affidavit of Lieutenant Roberts why the other requested documents were exempt from disclosure, and there was "nothing to indicate that CPD has refused to review all responsive records before asserting this exemption." *Ballew*, 2022 IL App (1st) 210715, ¶ 24. The court in *Ballew* further stated that the explanation in Lieutenant Roberts's affidavit distinguished that case from *Kelly v. Village of Kenilworth*, 2019 IL App (1st) 170780, where this court had held that an improper blanket exemption was claimed. *Ballew*, 2022 IL App (1st) 210715, ¶ 25. The holding in *Kelly* was based upon the FOIA request recipients' claiming that all documents were exempt concerning a 50-year-old unsolved homicide, where the recipients had responded with only generic explanations as to why disclosure would interfere with an ongoing investigation and had essentially admitted to not reviewing the 20,000 pages of withheld documents to determine whether anything in them could be disclosed. *Kelly*, 2019 IL App (1st) 170780, ¶¶ 36, 39, 47.

¶ 21    In this case, we are dealing with a fairly small number of records that were withheld, comprising about eight video recordings, the cell phone records of one person, and a PowerPoint presentation. As was the case in *Ballew*, we find no basis in the record for concluding that the defendants did not review these records before claiming a "blanket" exemption from disclosure under section 7(1)(d)(i). Instead, as explained above, we find that Officer Niezabitowski's affidavit supports the conclusion that the entirety of the body camera and POD camera footage, the T-Mobile records, and the PowerPoint analysis pertaining to this hit-and-run collision were reviewed

and found to come within this exemption for the reasons he articulated.

¶ 22     As for the plaintiff's argument that it is nevertheless entitled to obtain redacted versions of these records in some form, neither party addresses this argument in great detail. The plaintiff relies upon the provision of section 7(1) of FOIA (5 ILCS 140/7(1) (West 2022)) that states:

> "When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt. The public body shall make the remaining information available for inspection and copying."

The plaintiff also cites *Lucy Parsons Labs*, 2021 IL App (1st) 192073, ¶ 19, for the proposition that a public body's duty to redact the exempt information and produce the nonexempt information remains even where the redactions would leave the requestor with nothing useful.

¶ 23     We find that the plaintiff is not entitled to redacted versions of the law enforcement records at issue that are exempt on the basis that disclosure of them would interfere with pending or contemplated law enforcement proceedings. Section 7(1)(d)(i) of FOIA (5 ILCS 140/7(1)(d)(i) (West 2022)) exempts "[r]ecords" in the possession of a law enforcement agency. It is thus a broader exemption than many other exemptions that apply only to "information" within records. See, *e.g.*, *id.* § 7(1)(c) (exempting "[p]ersonal information contained within public records"); *id.* § 7(1)(j) (exempting certain "information pertaining to educational matters"). And section 7(1) states that redaction applies when a request involves "a public record that contains *information* that is exempt from disclosure under this Section, but also contains *information* that is not exempt from disclosure." (Emphases added.) *Id.* § 7(1).

¶ 24     When the court in *Lucy Parsons Labs* stated that a public body had a duty to redact exempt information and produce the nonexempt information "even where the redactions would leave the

requestor with nothing useful," it did so in the specific context of recognizing that the FOIA request at issue likely involved "a mix of both exempt and nonexempt information." *Lucy Parsons Labs*, 2021 IL App (1st) 192073, ¶ 19. The request in that case was for the City of Chicago's 150-page action plan for managing potential unrest on the day of the verdict in a high-profile murder trial involving a former police officer. *Id.* ¶ 3. In withholding the entire action plan, the defendant had relied upon the exemption for

> " '[v]ulnerability assessments, security measures, and response policies or plans that are designed to identify, prevent, or respond to potential attacks upon a community's population or systems, facilities, or installations, the destruction or contamination of which would constitute a clear and present danger to the health or safety of the community, but only to the extent that disclosure could reasonably be expected to jeopardize the effectiveness of the measures or the safety of the personnel who implement them or the public. Information exempt under this item may include such things as details pertaining to the mobilization or deployment of personnel or equipment, to the operation of communication systems or protocols, or to tactical operations.' " *Id.* ¶¶ 3, 13 (quoting 5 ILCS 140/7(1)(v) (West 2018)).

The court reasoned that while the defendant had met its burden of establishing that some information within the requested action plan qualified for this exemption, the presence of this information within it did not necessarily make the plan exempt in its entirety. *Id.* ¶¶ 14-15. The court held that, having determined that the plan "is likely a mix of both exempt and nonexempt information," remand was necessary so that the defendant could redact from the plan any information within it that qualified for exemption and produce that which remained. *Id.* ¶¶ 19, 21.

¶ 25    In this case, unlike in *Lucy Parsons Labs*, we are dealing with an exemption for "[r]ecords," not one for particular information within records. See 5 ILCS 140/7(1)(d)(i) (West 2022). And

again, this case involves a fairly small number of records—body camera and POD camera footage, the primary suspect's cell phone records subpoenaed from T-Mobile, and a PowerPoint presentation analyzing this other evidence. Nothing about the nature of these records causes us to suspect that any of these is a "record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure." *Id.* § 7(1). Rather, given their nature and the law-enforcement reasons for which they are exempt from disclosure, we conclude that the defendants have sufficiently shown through Officer Niezabitowski's affidavit that these records are exempt from disclosure in their entirety pursuant to section 7(1)(d)(i). The defendants had no duty in this instance to provide redacted versions of them to the plaintiff.

¶ 26 Finally, we find no merit to the plaintiff's argument that the defendants' voluntary disclosure of the witnesses' names and contact information in the traffic crash report and of photos and the license plate number of the suspect vehicle in a community alert undermines their position that disclosing information through a FOIA request would interfere with an ongoing police investigation. It is evident from Officer Niezabitowski's affidavit that the body camera and POD camera footage, the T-Mobile records, and the PowerPoint analysis of the evidence contains far more detailed information about the nature and extent of CPD's investigation into the collision than anything made public in the traffic crash report or the community alert issued in the days following the incident. If this detailed information were disseminated through the news media— particularly the recorded footage of the witnesses' statements and the suspect vehicle's path of travel—there is far greater risk of attracting the attention that would result in the harm discussed in Officer Niezabitowski's affidavit. Thus, the fact that CPD made public some limited information does not eliminate the risk of interference to the pending investigation if law enforcement records containing far greater information about it were disclosed.

¶ 27    Given our conclusion that all withheld records in this case are exempt from disclosure under section 7(1)(d)(i) of FOIA (*id.* § 7(1)(d)(i)), it is not necessary for us to separately consider whether the body camera footage is also exempt from disclosure under section 10-20(b) of the Body Camera Act (50 ILCS 706/10-20(b) (West 2022)). However, we choose to address the plaintiff's legal argument that this statute does not exempt disclosure through FOIA of footage recorded on a public street where the victim and witnesses lacked a "reasonable expectation of privacy."

¶ 28    Section 10-20(b) of the Body Camera Act (*id.*) provides as follows:

"(b) Recordings made with the use of an officer-worn body camera are not subject to disclosure under the Freedom of Information Act, except that:

(1) if the subject of the encounter has a *reasonable expectation of privacy*, at the time of the recording, any recording which is flagged, due to the filing of a complaint, discharge of a firearm, use of force, arrest or detention, or resulting death or bodily harm, shall be disclosed in accordance with the Freedom of Information Act if:

(A) the subject of the encounter captured on the recording is a victim or witness; and

(B) the law enforcement agency obtains written permission of the subject or the subject's legal representative;

(2) except as provided in paragraph (1) of this subsection (b), any recording which is flagged due to the filing of a complaint, discharge of a firearm, use of force, arrest or detention, or resulting death or bodily harm shall be disclosed in accordance with the Freedom of Information Act; and

(3) upon request, the law enforcement agency shall disclose, in accordance with the Freedom of Information Act, the recording to the subject of the encounter captured

on the recording or to the subject's attorney, or the officer or his or her legal representative.

For the purposes of paragraph (1) of this subsection (b), the subject of the encounter does not have a reasonable expectation of privacy if the subject was arrested as a result of the encounter. For purposes of subparagraph (A) of paragraph (1) of this subsection (b), 'witness' does not include a person who is a victim or who was arrested as a result of the encounter.

Only recordings or portions of recordings responsive to the request shall be available for inspection or reproduction. Any recording disclosed under the Freedom of Information Act shall be redacted to remove identification of any person that appears on the recording and is not the officer, a subject of the encounter, or directly involved in the encounter. Nothing in this subsection (b) shall require the disclosure of any recording or portion of any recording which would be exempt from disclosure under the Freedom of Information Act." (Emphasis added.)[3]

¶ 29    The parties' dispute centers around the meaning of "reasonable expectation of privacy" in the above statute. Both sides agree that the body camera footage at issue was "flagged" due to death resulting to a person in the recording. See *id.* § 10-20(a)(7)(B)(iii). They also agree that the subjects of the encounter captured on the recording are witnesses and the victim and that no written permission from the subjects or their legal representatives has been obtained by any party.

¶ 30    Instead, the plaintiff's position is that the body camera footage is disclosable under section

---

[3]Related to this statute, we also note that section 7(1)(a) of FOIA (5 ILCS 140/7(1)(a) (West 2022)) exempts from disclosure "[i]nformation specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law." And section 7.5(cc) of FOIA (*id.* § 7.5(cc)) exempts from disclosure "[r]ecordings made under the Law Enforcement Officer-Worn Body Camera Act, except to the extent authorized under that Act."

10-20(b)(2) above. Section 10-20(b)(1) is inapplicable, according to the plaintiff, because the victim and the witnesses who were the subjects of the recorded encounter had no "reasonable expectation of privacy" in events or conversations with police that were recorded on a public street, where this hit-and-run collision took place. The plaintiff contends that "reasonable expectation of privacy" is ambiguous as it is used in this statute. Based upon this purported ambiguity, the plaintiff urges us to look to the legislative history and to conclude that this phrase has the same meaning as in the test set forth in Justice Harlan's concurrence in *Katz v. United States*, 389 U.S. 347 (1967). Under that test, a reasonable expectation of privacy, the infringement of which violates the fourth amendment, requires (1) that a person has exhibited an actual (subjective) expectation of privacy and (2) that the expectation be one that society is prepared to recognize as reasonable. *Id.* at 361 (Harlan, J., concurring); see *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (test adopted by majority); *People v. Smith*, 152 Ill. 2d 229, 244-45 (1992). From this premise, the plaintiff argues that there is no basis for concluding that the witnesses whose interviews with police were recorded by body cameras expected that their conversations on a public street would be kept private, thus obviating the requirement of section 10-20(b)(1)(B) that their written permission be obtained as a condition of disclosing the body camera footage pursuant to a FOIA request.

¶ 31    This argument as to ambiguity requires us to apply principles of statutory interpretation. A court's primary objective in interpreting statutes is to ascertain and give effect to legislative intent. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. To do this, we look first to the plain and ordinary meaning of the language used in the statute, read in light of the subject it addresses and the legislature's apparent intent in enacting it. *People v. Lane*, 2023 IL 128269, ¶ 11. Words and phrases are considered in light of the statute as a whole instead of being viewed in isolation. *Relf v. Shatayeva*, 2013 IL 114925, ¶ 23. When the language of a statute is clear and unambiguous, we

must apply it as written, without resorting to legislative histories or other extrinsic sources to determine legislative intent. *Policemen's Benevolent Labor Committee v. City of Sparta*, 2020 IL 125508, ¶ 15. Only if statutory language is ambiguous may we consider extrinsic aids of construction. *Id.* A statute is ambiguous when it is subject to more than one reasonable interpretation, but statutory language is not ambiguous merely because the parties disagree about its meaning. *Lenz v. Advocate Health & Hospitals Corp.*, 2023 IL App (1st) 230740, ¶ 13.

¶ 32        Applying these principles of statutory interpretation, we reject the plaintiff's argument that the phrase "reasonable expectation of privacy" is ambiguous as used in section 10-20(b) of the Body Camera Act (50 ILCS 706/10-20(b) (West 2022)). Thus, we find no need to resort to legislative history to discern the legislative intent. Instead, we conclude from the plain language, read in context of the whole statute and considered in light of the statute's purpose, that the legislature intended this phrase to have a broader meaning than it does under fourth amendment law. Section 10-20(b) is specifically addressing disclosure of body camera recordings under FOIA. The statute's concern is with the reasonable privacy expectations of a victim or a witness who becomes "the subject of [an] encounter" with police that is recorded by body camera. *Id.* § 10-20(b)(1). If the phrase "reasonable expectation of privacy" in this context is interpreted as having the same contours as the test from *Katz* for a fourth amendment violation, it is difficult for us to conceive how any person who voluntarily engages in a conversation with a law enforcement officer about a crime of which he or she has been a victim or witness could ever be said to have a reasonable expectation of privacy in that conversation, regardless of where it occurs. See *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("no intrusion upon [a] person's liberty or privacy" occurs for fourth amendment purposes when a person voluntarily answers questions posed by police).

¶ 33        Instead, we believe that the legislature intended the phrase "reasonable expectation of privacy" in this statute to account for the fact that a victim or witness could engage in an encounter with a law enforcement officer while recognizing that the body camera recording of that encounter would likely be used for law enforcement purposes; by doing so, however, that victim or witness does not necessarily forfeit the reasonable expectation, stemming from the right to privacy (see *People v. Austin*, 2019 IL 123910, ¶¶ 62-63), that the law enforcement agency will not disseminate that recording to the news media or the public at large. The consideration is how a reasonable person in that position would expect the body camera recording to be used and the nature and extent of the audience to which he or she would reasonably expect it to be disclosed. This interpretation most reasonably advances the legislative purpose of "protecting individual privacy" while also furthering the goals of helping to collect evidence, improving transparency and accountability, and strengthening public trust in law enforcement agencies. See 50 ILCS 706/10-5 (West 2022).

¶ 34        Here, the body camera recordings were taken at the scene of a fatal hit-and-run collision that occurred on a public street. All five body camera recordings involve interviews with witnesses to the collision in which they described to police the suspect and the suspect's vehicle. At least one of the recordings also contains video of the victim who suffered ultimately fatal injuries receiving treatment in an ambulance. We find that reasonable persons in the position of these witnesses and the victim would reasonably expect their recorded encounters to be used for law enforcement purposes but would also expect, as a matter of privacy rights, that the recordings not be disseminated to the news media or the public. We believe that witnesses to a fatal hit-and-run collision who give statements to police describing the perpetrator would reasonably expect the police department to protect them from possible acts of retaliation by avoiding the dissemination

of their recorded statements to the media or the general public. Similarly, we believe that individuals who have just witnessed or been involved in a traumatic incident such as a fatal car collision would not reasonably expect the police to release video to the public showing them in a vulnerable state. And a person who is in an ambulance receiving treatment for injuries he or she has sustained in a collision would not reasonably expect the police to publicly release video footage showing this.

¶ 35    For these reasons, we hold that the body camera recordings at issue are ones in which the victim and witnesses who are the subjects of the encounters had reasonable expectations of privacy at the time of the recording. As such, the recordings are subject to disclosure only if written permission is obtained from the subjects or their legal representatives. As the record discloses no written permission for disclosure, the defendants properly withheld the recordings from disclosure under section 10-20(b)(1).

¶ 36                                              CONCLUSION

¶ 37    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 38    Affirmed.

---

### *NBC Subsidiary (WMAQ-TV) LLC v. Chicago Police Department*,
### 2025 IL App (1st) 240629

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-1297; the Hon. Joel Chupack, Judge, presiding, |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Matthew Topic, Josh Loevy, and Shelley Geiszler, of Loevy & Loevy, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Mary B. Richardson-Lowry, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Elizabeth Mary Tisher, Assistant Corporation, of counsel), for appellees. |

---